IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-69

No. 147A21

Filed 17 June 2022

IN THE MATTER OF: D.R.J.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from orders entered on 3 March 2021 by Judge Hal Harrison in District Court, Avery County. This matter was calendared in the Supreme Court on 13 May 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Stephen M. Schoeberle for petitioner-appellee Avery County Department of Social Services.*

*Matthew D. Wunsche for appellee Guardian ad Litem.*

*Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky Brammer, for respondent-appellant father.*

MORGAN, Justice.

Respondent-father appeals the trial court order terminating his parental rights to "Dana," a minor female child born in May 2010.[1] The order also terminated the parental rights of Dana's mother, but the mother is not a party to this appeal. We reverse the trial court's order which terminates respondent-father's parental rights.

---

[1] We use a pseudonym to protect the identity of the minor child and for ease of reading.

## I.   Factual and Procedural Background

After receiving reports in June 2018 and August 2018 concerning the mother's drug use and the commission of violence in the presence of the juvenile Dana, the Avery County Department of Social Services (DSS) filed a juvenile petition on 27 August 2018 alleging that Dana was a neglected juvenile.  On 4 October 2018, the trial court entered an order adjudicating Dana to be a neglected juvenile based on stipulations by the parents to the following facts as alleged in the juvenile petition:

> [DSS] became involved with this child on June 28, 2018 with a report of drug use by [the mother]. [The mother] agreed to complete a drug screen for the social worker on or about August 3, 2018, which came back positive for methamphetamine, amphetamine, Benzodiazepam and Lorazapam [*sic*]. On August 13, 2018, DSS received another report that [the mother] and her boyfriend (not the Respondent father herein) had gotten into an argument over drugs in the presence of the child. Due to ongoing concerns with these reports as well as drug use by the Respondent father, DSS and the parents agreed the child should reside with the maternal grandmother[.]

As an interim disposition, the trial court ordered that Dana remain in the care of her maternal grandmother.

On 20 October 2018, prior to the disposition hearing on 25 October 2018, DSS received a report that Dana had been sexually abused by the maternal step-grandfather. On the date of the disposition hearing, DSS obtained nonsecure custody of Dana and placed her in a licensed foster home. In the dispositional order entered on 28 November 2018, the trial court found that respondent-father was

ordered previously to sign and complete a case plan, but that he had not done so. The trial court directed that Dana remain in DSS custody. In the subsequent 25 January 2019 permanency planning order, the trial court set the primary plan as reunification with a concurrent plan of custody or guardianship with a suitable adult.

¶ 4        Respondent-father entered into a case plan on 26 October 2018 which required him to complete a mental health and substance abuse assessment, to follow all of the resulting recommendations, and to submit to drug screens prior to visitation with Dana. The case plan was subsequently modified several times in order to include the completion of parenting classes, as well as additional substance abuse counselling and outpatient treatment for alcohol addiction. Despite respondent-father's initial progress in addressing his substance abuse issues in the 16 September 2020 permanency planning order, the trial court made findings of fact which showed that respondent-father's progress with his case plan had stalled. The trial court relieved DSS of its efforts toward the reunification of respondent-father with the juvenile Dana and changed the permanent plan to adoption with a concurrent plan of custody or guardianship with a suitable adult.

¶ 5        DSS filed a motion to terminate parental rights of respondent-father on 30 September 2020, advancing these allegations as grounds for termination:

> A. Per G.S. 7B-1111(a)(3) neither parent has not [*sic*] paid any consistent support for the minor child, the juvenile having been placed in the custody of [DSS] for a continuous period of six months next preceding the filing of the

petition, since the final Adjudication and Dispositional Order was entered. Both parents have willfully failed for such a period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so, in that neither parent is disabled, is able to work, and has paid nothing towards the cost of care of the minor child during that period of time.

B. Per G.S. 7B-1111(a)(6) both parents are incapable of providing for the proper care and supervision of the juvenile such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and there is a reasonable probability that such incapability will continue for the foreseeable future. Neither parent has provided for the financial or housing needs of the child since the child came into the custody of [DSS], and neither is prepared to do so now. The parents have done nothing to address or alleviate the conditions which led to the adjudication of this child as a neglected juvenile[.][2]

¶ 6   At the conclusion of the termination hearing on 4 February 2021, the trial court announced that the evidence supported the termination of respondent-father's parental rights under N.C.G.S. § 7B-1111(a)(6). In the termination order entered on 3 March 2021, the trial court determined that grounds existed to terminate respondent-father's parental rights under N.C.G.S. § 7B-1111(a)(3), (6), and (7). The trial court rendered findings of fact in its decision which mirrored the language in DSS's termination motion. The trial court also made findings related to respondent-father's progress toward completing his case plan and his efforts toward

---

[2] The motion to terminate parental rights included an additional allegation, pursuant to N.C.G.S. § 7B-1111(a)(7), that grounds existed to terminate only the mother's parental rights due to abandonment.

reunification with Dana. Based on the findings of fact, the trial court reached the

following conclusions of law related to the alleged grounds for termination of parental

rights:

> 2. Grounds exist for the termination of the parental rights of the Respondent [p]arents;
>
> 3. [Dana] has been adjudicated a neglected juvenile and there remains a strong likelihood of a repetition of neglect if [she] was returned to either parent;
>
> 4. [Dana] has been left in foster care or other placement for more than one year without there being any reasonable progress made under the circumstances to correct conditions leading to [her] removal;
>
> 5. The parents have willfully abandoned [Dana] by failing to make reasonable efforts at completing a case plan in a timely manner, and not addressing the problems leading to removal of [Dana];
>
> . . . .
>
> 8. [DSS] has shown by clear, cogent and convincing evidence that the grounds exist to terminate the parental rights of the Respondent parents as more specifically set forth herein.
>
>  . . . .
>
> 10. That grounds exist pursuant to N.C.G.S. §7B-1111 for the termination of the parental rights of the Respondent parents.

The trial court ultimately concluded that it was in the juvenile Dana's best interests

to terminate the parental rights of respondent-father, and thereupon terminated

respondent-father's parental rights. Respondent-father appeals.

## II.     Arguments on Appeal

¶ 7        Respondent-father collaterally attacks the initial custody determination. He also challenges both the trial court's adjudication of grounds for termination of his parental rights and the trial court's conclusion of the best interests of the child. We address each argument in turn.

### A. Initial Determination of Custody

¶ 8        Respondent-father first argues that, as the parent who did not commit the alleged wrongdoing which led to the juvenile Dana being placed in DSS custody, he was "unfairly denied custody" of Dana at the outset of the case because the trial court never found that he was unfit or that he acted inconsistently with his constitutionally protected status. Respondent-father contends that Dana should have been placed in his care upon her removal without a requirement for his compliance with a case plan.

¶ 9        Dana was adjudicated as neglected based upon the parents' stipulation to facts which were alleged in the juvenile petition. At the disposition hearing, the trial court determined that it was in Dana's best interests for DSS to have custody of the juvenile and ordered the agency to assume custody.

¶ 10        Respondent-father had a right to appeal the adjudication and dispositional orders, *see* N.C.G.S. § 7B-1001(a)(3) (2021) (providing the right to appeal "[a]ny initial order of disposition and the adjudication order upon which it is based" to the Court

of Appeals), but he failed to do so. Such failure to appeal "generally serves to preclude a subsequent collateral attack . . . during an appeal of a later order terminating the parent's parental rights[,]" *In re A.S.M.R.*, 375 N.C. 539, 544 (2020),except that a collateral attack on an adjudication order or a dispositional order may be appropriate on appeal of an order terminating parental rights when said order "is void on its face for lack of jurisdiction[.]" *Id.* at 543 (quoting *In re Wheeler*, 87 N.C. App. 189, 193–94 (1987)).

¶ 11        Respondent-father does not contend that either the adjudication order or the dispositional order is void, and we conclude that neither of the trial court's orders is void on its face for lack of jurisdiction. Because respondent-father failed to appeal the adjudication and dispositional orders, they remain valid and binding, and respondent-father is precluded from instituting a collateral attack on the trial court's custody determination in this appeal from the tribunal's order which terminated his parental rights.

**B. Motion to Terminate Parental Rights**

¶ 12        Respondent-father next challenges DSS's motion to terminate his parental rights to the child Dana, contending that the motion insufficiently alleges the grounds that the trial court found to exist in order to terminate his parental rights in Conclusions of Law 3, 4, and 5 of the trial court's order. A motion to terminate parental rights must include, *inter alia*, "[f]acts that are sufficient to warrant a

determination that one or more of the grounds for terminating parental rights exist." N.C.G.S. § 7B-1104(6) (2021). "While there is no requirement that the factual allegations be exhaustive or extensive, they must put a party on notice as to what acts, omissions or conditions are at issue." *In re B.C.B.*, 374 N.C. 32, 34 (2020) (quoting *In re Hardesty*, 150 N.C. App. 380, 384 (2002)).

¶ 13        In this case, the termination of parental rights motion alleged grounds for the termination of respondent-father's parental rights based on his alleged failure to pay reasonable support for Dana's care and dependency. *See* N.C.G.S. 7B-1111(a)(3), (6) (2021). The trial court's Conclusions of Law 3, 4, and 5, as set forth above, correspond to the statutory grounds for termination based on neglect, willful failure to make reasonable progress, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1), (2), (7) (2021). Respondent-father asserts that the "termination motion did not allege grounds (a)(1) and (a)(2) at all or ground (a)(7) for [respondent-father], much less any specific facts to support" those grounds; therefore, these grounds for termination "cannot be adjudicated and should be disregarded."

¶ 14        The guardian ad litem (GAL) concedes that the termination motion specifically cited only N.C.G.S. § 7B-1111(a)(3) and (a)(6) as grounds to terminate respondent-father's parental rights. However, the GAL contends that the motion contained sufficient factual allegations to provide respondent-father with adequate notice that his parental rights could be terminated under N.C.G.S. § 7B-1111(a)(1)

and (a)(2) because "[w]ithin the paragraphs containing those citations" to (a)(3) and (a)(6) "the motion states: 'The parents have done nothing to address or alleviate the conditions which led to the adjudication of this child as a neglected juvenile.' " The GAL further submits that the motion to terminate incorporated by reference "the initial adjudication and interim disposition order, the dispositional order entered on 25 October 2018, and the 3 September 2020 permanency planning order that made adoption Dana's permanent plan[,]" which describe respondent-father's and the mother's history of substance abuse, the establishment of the parents' respective case plans, and "their general noncompliance with the steps of those case plans over the life of the case." The GAL argues that the incorporation of these prior orders, "plus the language that informed respondent-father that he had not made adequate progress on the conditions that led to the original adjudication, put respondent[-]father on notice that his rights could be terminated based on neglect or willful failure to make reasonable progress." The GAL asserts that the trial court's findings support such an adjudication pursuant to N.C.G.S. § 7B-1111(a)(1) or (2).

¶ 15 DSS joins the GAL's argument that the motion to terminate parental rights provided respondent-father with adequate notice that his parental rights could be terminated pursuant to N.C.G.S. § 7B-1111(a)(2).[3] However, DSS submits that the

---

[3] DSS only argues that the trial court properly adjudicated grounds for termination under N.C.G.S. § 7B-1111(a)(2). DSS does not address any of the other grounds.

requirement for adequate notice "may be satisfied by findings made in court orders attached to" the termination motion alone.

In support of their positions, DSS and the GAL rely upon *In re Hardesty*, 150 N.C. App. 380, and *In re Quevedo*, 106 N.C. App. 574, 578, *appeal dismissed*, 332 N.C. 483 (1992). In those cases, the Court of Appeals held that a termination of parental rights petition which included only a "bare recitation . . . of the alleged statutory *grounds* for termination" was insufficient to comply with the statutory requirement that a petition contain sufficient facts to warrant a determination that grounds for termination exist. *In re Quevedo*, 106 N.C. App. at 579; *In re Hardesty*, 150 N.C. App. at 384. In *In re Quevedo*, the petition to terminate parental rights alleged that the respondent "neglected the child[,]" and "willfully abandoned the child for at least six (6) months immediately preceding the filing of the petition." 106 N.C. App. at 578–79. The Court of Appeals concluded that the petition sufficiently alleged grounds for termination because in addition to that "bare recitation" of the statutory language, the termination petition incorporated an earlier custody award, which contained "sufficient facts to warrant such a determination." *Id.* at 579. The petition in *In re Hardesty* alleged that the respondent was "incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is dependent and there is a reasonable probability that such incapability will continue for the foreseeable future." 150 N.C. App. at 384. In *Hardesty*, the lower appellate court opined that "[u]nlike

*Quevedo*, there was no earlier order containing the requisite facts incorporated into the petition[,]" and decided that the petition, which "merely use[d] words similar to those in the statute setting out grounds for termination," was insufficient to put the respondent "on notice as to what acts, omissions or conditions [were] at issue." *Id.*

¶ 17        Unlike in *In re Quevedo* and *In re Hardesty*, the termination motion in the present case does not even contain a "bare recitation" of the statutory grounds for termination pursuant to N.C.G.S. § 7B-1111(a)(1) or (2). While the GAL contends that the termination motion's sentence representing that the "parents have done nothing to address or alleviate the conditions which led to the adjudication of this child as a neglected juvenile[,]" which was located in the paragraph beginning "Per G.S. 7B-1111(a)(6) both parents are incapable of providing for the proper care and supervision of the juvenile such that the juvenile is a dependent juvenile" is sufficient, nonetheless this statement does not adequately allege the statutory language for an adjudication of the existence of grounds to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) or (2). *See* N.C.G.S. § 7B-1111(a)(1) ("The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101."); *see* N.C.G.S. § 7B-1111(a)(2) ("The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the

court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile."). Therefore, we reject the GAL's assertion here that the termination motion's above-referenced sentence, even when coupled with the incorporation of prior orders, was "sufficient to warrant a determination" that grounds for terminating parental rights existed under N.C.G.S. § 7B-1111(a)(1) or (2). *See* N.C.G.S. § 7B-1104(6). We also rebuff DSS's contention that respondent-father's notice of potential adjudication pursuant to subsection (a)(2) "was more than sufficient" based upon the motion to terminate incorporating "generally all of the prior orders and court reports and specifically" the adjudication order, the dispositional order, and the 3 September 2020 permanency planning order. To hold otherwise would nullify the notice requirement of N.C.G.S. § 7B-1104(6) and contravene the delineation of specific grounds for terminating parental rights. The consequence of such a decision would require a respondent parent to refute any termination ground that could be supported by any facts alleged in any document attached to a termination motion or petition.

¶ 18 Moreover, DSS drafted the termination motion at issue and could have specifically included either or both N.C.G.S. § 7B-1111(a)(1) or (2) as grounds for termination of parental rights but did not do so. DSS's and the GAL's arguments on appeal constitute an impermissible attempt to conform the termination of parental rights motion to the evidence presented at the termination hearing. *See In re B.L.H.*,

190 N.C. App. 142, 146 (reversing the trial court's allowance of DSS to amend the termination petition at the hearing to add grounds which were not alleged), *aff'd per curiam*, 362 N.C. 674 (2008).

¶ 19        We conclude that the motion to terminate parental rights was insufficient to provide notice to respondent-father that his parental rights were subject to termination for neglect or for willful failure to make reasonable progress pursuant to N.C.G.S. § 7B-1111(a)(1) or (2), and therefore the trial court's adjudication finding the existence of either ground was error. *See In re B.O.A.*, 372 N.C. 372, 382 (2019) ("a trial court would clearly err by terminating a parent's parental rights in a child for failure to make reasonable progress pursuant to N.C.G.S. § 7B-1111(a)(2) in the event that this ground for termination had not been alleged in the termination petition or motion,") *see also In re S.R.G.*, 195 N.C. App. 79, 83 (2009) (holding that the failure to allege that the parent's parental rights were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) deprived the trial court of the right to terminate the parent's parental rights on the basis of that statutory ground for termination).

¶ 20        For the same reason, we find to be unpersuasive the GAL's argument that respondent-father "waived any objection to the sufficiency of the petition to allege" grounds for termination under N.C.G.S. § 7B-1111(a)(1) or (2) because he did not present any such arguments at the termination of parental rights hearing and because he presented evidence of his compliance with the case plan along with his

efforts to address the issues that led to the juvenile Dana's removal. The GAL relies, in part, on *In re H.L.A.D.*, 184 N.C. App. 381, 392 (2007), *aff'd per curiam*, 362 N.C. 170 (2008) for this contention. The respondent-father in *In re H.L.A.D.* moved to dismiss the termination of parental rights petition in the trial court after the presentation of the petitioner's evidence and at the close of all of the evidence "based on the insufficiency of the evidence[.]" *Id.* at 392. On appeal, the respondent-father argued, *inter alia*, that the termination petition failed to comply with the requirements of N.C.G.S. § 7B-1104(6) by failing to allege sufficient facts to warrant a determination that grounds existed to terminate his parental rights. *Id.* at 392. The Court of Appeals noted in its decision that since the Rules of Civil Procedure apply to termination proceedings, a Rule 12(b)(6) motion cannot be made for the first time on appeal. *Id.* Because the respondent-father's argument on appeal in *In re H.L.A.D.* challenged the legal sufficiency of the petition itself and not the sufficiency of the evidence as he argued in his motion to dismiss in the trial court, the Court of Appeals held that the respondent-father failed to properly preserve the sufficiency of the petition issue for appeal. *Id.* Notably, the father in *In re H.L.A.D.* was arguing that the facts alleged in the petition were insufficient to support the grounds alleged in the petition, not that the petition failed to allege the grounds on which the trial court ultimately made a determination. *Id.*

¶ 21        Additionally, it would be illogical to conclude in the instant case that

respondent-father waived appellate review by failing to object at the termination hearing because the motion to terminate his parental rights failed to provide him with notice that his parental rights were potentially subject to termination under N.C.G.S. § 7B-1111(a)(1) or (2). The only grounds for adjudication specified in the motion for termination of parental rights and at the termination hearing were N.C.G.S. § 7B-1111(a)(3) and (6). Grounds for termination pursuant to N.C.G.S. § 7B-1111(a)(1) and (2) appear for the first time in the trial court's subsequent written order; therefore, the first and only available time to challenge the adjudication of the existence of grounds addressed in N.C.G.S. § 7B-1111(a)(1) and (2) is on appeal. *See In re B.R.W.*, 278 N.C. App. 382, 2021-NCCOA-343, ¶ 40 ("An appeal is the procedure for 'objecting' to the trial court's findings of fact and conclusions of law.").

¶ 22        We also hold in the current case that the termination of parental rights motion did not provide notice to respondent-father that his parental rights were subject to termination for willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7). The termination motion only specified N.C.G.S. § 7B-1111(a)(7) as grounds for termination for Dana's mother; consequently, the trial court's findings of fact and conclusions of law that respondent-father abandoned Dana were erroneous. *In re B.O.A.*, 372 N.C. at 382. Accordingly, we only consider the properness of the trial court's adjudication of the existence of grounds to terminate for which respondent-father received adequate notice in the termination motion; namely

N.C.G.S. § 7B-1111(a)(3) and (6).

**C. Grounds for Adjudication**

Respondent-father challenges the trial court's findings of fact and the sufficiency of the evidence upon which the findings are based which led to the forum's determination that grounds existed for the termination of his parental rights under N.C.G.S. § 7B-1111(a)(3) and (6). This Court reviews a trial court's adjudication under N.C.G.S. § 7B-1111 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111 (1984). "[T]he issue of whether a trial court's adjudicatory findings of fact support its conclusion of law that grounds existed to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a)" is reviewed de novo. *In re T.M.L.*, 377 N.C. 369, 2021-NCSC-55, ¶ 15.

As discussed above, the trial court could have only adjudicated grounds to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(3) and (6). Respondent-father acknowledges DSS alleged the existence of grounds under N.C.G.S. § 7B-1111(a)(3) in its motion, but he argues that no evidence was presented, and the trial court made no findings, concerning child support.

A "court may terminate parental rights upon a finding" that

> [t]he juvenile has been placed in the custody of a county department of social services . . . and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a

reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C.G.S. § 7B-1111(a)(3) (2021).

Here, the trial court made a single finding concerning the payment of support, which recited the statutory language:

> Per G.S. 7B-1111(a)(3) neither parent has not [*sic*] paid any consistent support for the minor child, the juvenile having been placed in the custody of [DSS] for a continuous period of six months next preceding the filing of the petition. Both parents have willfully failed for such a period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so, in that neither parent is disabled, is able to work, and has paid nothing towards the cost of care of the minor child during that period of time.

Whether this finding is best classified as an ultimate finding of fact or a conclusion of law is irrelevant because "that classification decision does not alter the fact that the trial court's determination concerning the extent to which a parent's parental rights in a child are subject to termination on the basis of a particular ground must have sufficient support in the trial court's factual findings." *In re N.D.A.*, 373 N.C. 71, 77 (2019). The trial court entered no other findings regarding the cost of care for the juvenile Dana or concerning respondent-father's ability to pay. *Cf. In re S.E.*, 373 N.C. 360, 367 (2020) (holding that where a trial court's findings regarding a reasonable portion of the cost of care of the child is "a sum greater than zero[,]" the respondent's ability to pay "a sum greater than zero" and her failure to do so were sufficient to

support an adjudication of grounds under N.C.G.S. § 7B-1111(a)(3)). Moreover, no such evidence as to the cost of the child's care or respondent-father's ability to pay was introduced at the termination hearing or into the record. Consequently, insofar as the trial court adjudicated grounds to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(3), such an adjudication is unsupported by the evidence contained in the record and any resulting findings of fact, and therefore must be reversed. *See In re Z.G.J.*, 378 N.C. 500, 2021-NCSC-102, ¶ 33.

¶ 27        The order terminating the parental rights of both parents similarly contained a single finding which recognized the ground of dependency to exist. It stated:

> Per G.S. 7B-1111(a)(6) both parents are incapable of providing for the proper care and supervision of the juvenile such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101 and there is a reasonable probability that such incapability will continue for the foreseeable future. Neither parent has provided for the financial or housing needs of the child since the child came into the custody of [DSS], and neither is prepared to do so now.

However, an adjudication under N.C.G.S. § 7B-1111(a)(6)

> requires the trial court to make two ultimate findings: (1) that the parent is incapable (and will continue to be incapable for the foreseeable future) of providing proper care and supervision to their child, rendering the child a "dependent juvenile" as defined by N.C.G.S. § 7B-101(9) . . .; and (2) that the parent lacks an appropriate alternative child care arrangement.

*In re K.C.T.*, 375 N.C. 592, 596 (2020) (quoting N.C.G.S. § 7B-1111(a)(6) and citing *In*

*re K.R.C.*, 374 N.C. 849, 859 (2020)).

DSS forgoes the presentation of any arguments concerning the trial court's purported adjudication under N.C.G.S. § 7B-1111(a)(6), and the GAL concedes that the trial court's findings of fact are insufficient "to support the ground of dependency, because the trial court did not address the availability of an alternate placement option[.]" We agree with the GAL's candid acknowledgement that the trial court failed to find that respondent-father lacked an appropriate alternative childcare arrangement. Moreover, respondent-father was not questioned about potential alternative childcare arrangements during his testimony at the termination hearing. No other witness addressed the issue. "Since the trial court failed to make this required finding and no evidence was presented that would allow it to make such a finding," any such "conclusion that dependency provides a ground for termination must be reversed." *In re K.C.T.*, 375 N.C. at 597.

**D. Dispositional Determination**

Lastly, respondent-father argues that the trial court failed to make sufficient findings of fact to support its determination that termination of respondent-father's parental rights was in the juvenile Dana's best interests. However, since we have already concluded that the trial court erred by adjudicating the existence of grounds to terminate respondent-father's parental rights under N.C.G.S. § 7B-1111(a), we do not need to address this issue. *See In re Young*, 346 N.C. 244, 252 (1997).

## III.   Conclusion

Because respondent-father failed to appeal the underlying adjudication and dispositional orders, he is precluded from instituting a collateral attack upon the custody determinations in those orders in this appeal from the order terminating his parental rights. With regard to the existence of grounds for the termination of respondent-father's parental rights, the termination of parental rights motion failed to provide sufficient notice to respondent-father that his parental rights were potentially subject to termination under N.C.G.S. § 7B-1111(a)(1), (2) or (7), and therefore the trial court erred in adjudicating the existence of those grounds. As to the grounds which were adequately alleged in the motion to terminate parental rights, insufficient evidence was presented, and thereupon insufficient findings were made, to support an adjudication of grounds for termination of parental rights under N.C.G.S. § 7B-1111(a)(3) or (6). Accordingly, this Court holds that the trial court erred in adjudicating the existence of grounds to support a termination of respondent-father's parental rights. Therefore, we reverse the trial court's order.

REVERSED.